UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FERNANDO JUSTINO SANTANA,

Plaintiff,

v.

SHOOK HARDY & BACON; KELLY FRAZIER; SCOTT CHESIN; FORREST SOLUTIONS; and GARY STANEK,

Defendants.

25-CV-5088 (RA)

MEMORANDUM OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

This is a discrimination action brought by Plaintiff Fernando Justino Santana, proceeding *pro se* against his former employer, a staffing agency called Forrest Solutions and its employee Gary Stanek (the "Forrest Defendants"), as well as the law firm to which he was assigned, Shook Hardy & Bacon, and its employees Kelly Frazier and Scott Chesin (the "Shook Defendants") (collectively the "Defendants"). He alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, and the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code § 8-101, *et seq.* Although the gravamen of the Complaint involves employment discrimination, the limited question now before the Court is whether Plaintiff should be required to pursue his claims through arbitration rather than litigation. For the reasons that follow, the Court finds that he must.

## BACKGROUND

The following facts are drawn from the parties' submissions and, unless disputed, are presumed true for the purposes of resolving the motion to compel arbitration. *Melendez v. Ethical Culture Fieldston Sch.*, 789 F. Supp. 3d 316, 322 n.1 (S.D.N.Y. 2025). Plaintiff was hired by

Forrest in February 2023 and assigned to work for two companies during the course of his tenure. He worked as a concierge for the first company and was then assigned to Shook in September 2023 as the Lead Office Services Associate. Dkt. No. 31 ("Am. Compl.") ¶¶ 15–16. As part of his onboarding with Forrest on January 20, 2023, Plaintiff electronically signed a Mutual Dispute Resolution Agreement, one of several documents included in Forrest's onboarding packet. *See* Dkt. No. 56 ("Tysz Decl.") ¶¶ 5–6; Dkt. No. 56-1 ("Mutual Dispute Resolution Agreement" or "Agreement") at 5; *id.* at 19 ("NY Field-Policy Acknowledgment Documents").

The Agreement requires parties to it, as well as certain non-signatories including clients, to arbitrate "any controversy, dispute, or claim that could otherwise be raised in court," where Forrest's internal resources did not lead to resolution in the first instance. *See* Agreement §§ 1–2. It also includes a delegation clause, which gives an arbitrator rather than a court exclusive authority to decide threshold questions of arbitrability. *See Jager v. DoorDash, Inc.*, 2026 WL 851375, at *4 (S.D.N.Y. Mar. 26, 2026); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). The clause reads:

> Authority to Determine Arbitrability - Except as provided in Section III, the arbitrator shall have the exclusive authority to resolve any dispute relating to the arbitrability of any individual claim or the enforceability or formation of this Agreement (including all defenses to contract enforcement such as, for example, waiver of the right to compel arbitration).

Agreement § IV; *see* Dkt. No. 38 ("Forrest Defs. Br.") at 4–5.

In the years that followed, Plaintiff's relationship with his supervisors at Shook soured. He accused them of discriminating against him as the "only male professional staff member of color (Hispanic American) at the Shook New York office," Am. Compl. ¶ 14, and he was ultimately fired from his position on February 28, 2025. *Id.* ¶ 41. Shortly thereafter, he filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 45.

Plaintiff commenced this action on June 12, 2024. *See* Dkt. No. 1 ("Compl."). On August 14, 2025, the Forrest Defendants filed a motion to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* and to stay this action during the pendency of arbitration proceedings. *See* Dkt. Nos. 10–13. The Shook Defendants moved to join that motion. *See* Dkt. Nos. 17–19. Because the Complaint failed to allege discrimination on the basis of a protected characteristic—even affording Plaintiff the "special solicitude" *pro se* litigants are due in this Circuit, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)—on September 2, 2025, the Court *sua sponte* dismissed it with leave to replead. *See* Dkt. No. 30 ("Mem. Opinion & Order"). Plaintiff filed an Amended Complaint on October 1, 2025, and both sets of Defendants re-filed their respective motions to compel arbitration. *See* Dkt. Nos. 37, 41.

For the reasons that follow, Defendants' motion to compel arbitration and stay the matter is granted.

**LEGAL STANDARD**

In deciding motions to compel, courts "apply a standard similar to that applicable for a motion for summary judgment." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017).[1] That requires the Court to "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002).

The party moving to compel arbitration "bears an initial burden of demonstrating that an agreement to arbitrate was made." *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022). Once that burden is carried, it shifts to the party resisting arbitration to show that the agreement is unenforceable. *See id.* When the agreement contains a clause that delegates questions of

[1] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, omissions, and alterations.

enforceability to the arbitrator, the Court looks to whether there is "clear and unmistakable evidence" that the parties delegated enforceability to the arbitrator. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 72 (2019) (quoting *First Options, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Finally, the FAA requires courts to stay proceedings "after all claims have been referred to arbitration and a stay" has been requested. *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015).

## DISCUSSION

### I. Agreement to Arbitrate

Although questions as to the validity and scope of an arbitration agreement can be delegated to an arbitrator, which the parties have done here, they "may not delegate to the arbitrator the fundamental question of whether they formed the agreement to arbitrate in the first place." *Schwartz v. Sterling Ent. Enters., LLC*, 2021 WL 4321106, at *4 (S.D.N.Y. Sept. 23, 2021) (citing *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 251 (2d Cir. 2019)). Therefore, regardless of any delegation clause, the Court must first determine whether the parties agreed to arbitrate in the first instance and then turn to whether a valid delegation clause exists.

Under New York law, the party seeking arbitration "need only prove the existence of a valid arbitration agreement by a preponderance of the evidence." *Kutluca v. PQ N.Y. Inc.*, 266 F. Supp. 3d 691, 700–01 (S.D.N.Y. 2017). Moreover, "New York contract law presumes that a written agreement is valid and that it accurately reflects the intention of the parties, and imposes a heavy burden on the party seeking to disprove those presumptions." *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 241–42 (S.D.N.Y. 2020). "Under such principles, in the absence of fraud or other wrongful act on the part of another contracting party, a party who signs or accepts a written contract is conclusively presumed to know its contents and to assent to them." *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004). "This conclusive presumption of

knowledge and assent applies also to the terms of a separate document that is incorporated into a contract by reference, even when the party resisting arbitration contends that he never received the incorporated document." *Schwartz*, 2021 WL 4321106, at *3 (citing *Pagaduan v. Carnival Corp.*, 709 F. App'x 713, 716 (2d Cir. 2017)).

Despite Plaintiff's contentions to the contrary, the Court finds the evidence that he and the Forrest Defendants formed an agreement to arbitrate more than sufficient. Although Plaintiff disputes that he "ever saw, reviewed, or signed any arbitration agreement," Dkt. No. 48 ("Pl. Opp'n") at 1–2, the SignNow audit log submitted with the Forrest Defendants' Chief Human Resource Officer's declaration reflects that Plaintiff electronically executed the NY Field-Policy Documents, including the Mutual Dispute Resolution Agreement, on January 20, 2023. *See* Agreement at 3; NY Field-Policy Acknowledgment Documents; Tysz Decl. ¶¶ 4–8. Where, as here, the moving party has "produced an arbitration agreement that appears to bear [Plaintiff's] electronic signature," courts routinely conclude that an arbitration agreement was formed. *Barrows*, 36 F.4th at 50; *see also Ross v. Silver Oak Servs. Partners, LLC*, 2026 WL 1520743, at *10 (E.D.N.Y. June 1, 2026) (collecting cases). The Court does so here as well.

### II. Delegation Clause

Having established that an agreement to arbitrate was formed, the Court turns to whether the Agreement includes a valid delegation clause. Just as parties may agree to have an arbitrator decide the merits of a dispute, they may further agree, by way of a delegation clause, to have the arbitrator decide "gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). "Where the parties clearly and unmistakably agree to arbitrate threshold questions such as whether the arbitration clause applies to a particular dispute, or whether it is enforceable," courts must honor that agreement and "leave such questions to the arbitrator,"

*Schwartz*, 2021 WL 4321106, at *4. The delegation clause in the Mutual Dispute Resolution Agreement gives the arbitrator "exclusive authority to resolve any dispute relating to the arbitrability of any individual claim or the enforceability or formation of this Agreement." Agreement § IV. There is thus "clear and unmistakable evidence" that the parties delegated questions of arbitrability to the arbitrator. *Henry Schein*, 586 U.S. at 72; *Jacobson v. Live Nation Ent.*, 2026 WL 1864990, at *7 (S.D.N.Y. June 29, 2026). "When a contract contains a valid delegation to the arbitrator of the power to determine arbitrability, such a clause will be enforced absent a specific challenge to the delegation clause by the party resisting arbitration." *Id.* (citing *Long v. Amway Corp.*, 306 F. Supp. 3d 601, 608 (S.D.N.Y. 2018)). Given that Plaintiff does not specifically challenge the validity of the delegation clause, the Court must enforce it. *Id.* (citing *Rent-A-Center*, 561 U.S. at 71–72).

**III. Arbitrability**

The final question is whether any of the issues Plaintiff raises are not arbitrable. He argues that even if he did enter into the Agreement, it expired upon the termination of his first assignment and therefore did not control during his tenure at Shook. Pl. Opp'n at 2, 11, 14–15. He next contends that the Shook Defendants, as non-signatories, "cannot invoke an agreement it never signed and that never mentioned it." *Id.* at 2; *see also id.* at 16–18. Finally, he maintains that the Agreement is procedurally and substantively unconscionable. *Id.* at 12–13, 18–21. Defendants respond that questions like these, which go to the validity, scope, and enforceability of the Agreement must be resolved by an arbitrator. Forrest Defs. Br. at 4; Dkt. No. 42 ("Shook Defs. Br.") at 2; *Foran v. Nat'l Football League*, 2019 WL 2408030, at *3 (S.D.N.Y. June 7, 2019). The Court again agrees with Defendants.

First, with respect to Plaintiff's argument regarding the temporal dimension of the Agreement, courts have held that the applicability of an arbitration agreement after termination and re-hire,

which is what Plaintiff alleges occurred after his first assignment, is a question of arbitrability since it goes to the scope of the contract. *Kassim v. CVS Albany, LLC*, 2022 WL 4357465, at *10 (E.D.N.Y. Sept. 20, 2022). In other words, it can be delegated. So too here.

Plaintiff's argument that he is not bound to arbitrate his claims against the Shook Defendants, non-signatories to the Agreement, presents a closer question but is ultimately unpersuasive. "To be sure, a signatory's agreement to arbitrate issues of arbitrability with another signatory . . . does not necessarily indicate an intent to arbitrate the same issues with a non-signatory." *Ross v. Finzer*, 2025 WL 2860070, at *5 (S.D.N.Y. Oct. 8, 2025). In *Contec Corp. v. Remote Solution, Co., Ltd.*, the Second Circuit addressed the question of whether the ability of a non-signatory to enforce an arbitration agreement is an issue "pertaining to the existence, scope or validity of the arbitration agreement," which can be delegated. 398 F.3d 205, 209 (2d Cir. 2005). It held that if "there is a sufficient relationship between the signatory . . . and the non-signatory seeking to compel arbitration . . . the question of arbitrability can be delegated to the arbitrator, where, as here, clear evidence exists of an intent to have such issues decided by the arbitrator." *Id.*

A sufficient relationship exists here. Parties are sufficiently related "if [a] non-signatory defendant has a corporate relationship to a signatory party including cases involving subsidiaries, affiliates, agents, and other related business entities." *Awad v. Extended Nursing Pers.*, 2025 WL 753865, at *8 (S.D.N.Y. Mar. 10, 2025). Plaintiff alleges that Forrest and Shook jointly employed him and shared control over the terms and conditions of his employment. *See* Am. Compl. ¶ 10. Moreover, the Agreement expressly extends to Forrest's clients like Shook. *See* Agreement § II. Those allegations are sufficient to delegate the question of whether Shook may invoke the Agreement to the arbitrator.

Plaintiff's remaining arguments sound in procedural and substantive unconscionability. *See* Pl. Opp'n at 12–13; 18–21. These too are arbitrable. "[T]he law is clear that absent a specific challenge, the delegation of the questions of unconscionability and enforceability of an arbitration agreement to an arbitrator must be upheld." *Schwartz*, 2021 WL 4321106, at *6. The delegation clause here explicitly delegates questions of "enforceability and formation," and accordingly, these arguments are also arbitrable. Agreement § IV.

**IV. Stay**

Defendants also seek a stay of these proceedings pending arbitration. *See* Forrest Defs. Br. at 9–10; Shook Defs. Br. at 1, 3. "Pursuant to the FAA, if a matter is arbitrable, a stay of the litigation is entered pending completion of the arbitration." *Xiaohong v. Dingledine*, 2025 WL 1604001, at *5 (S.D.N.Y. June 6, 2026). Because the Court concludes that this dispute is arbitrable, the litigation shall be stayed pending resolution of the motion to compel arbitration.

**V. Use of Artificial Intelligence**

As a final matter, the Court addresses Defendants' concern that Plaintiff's opposition brief contained citations and quotations to non-existent case authority, which they attribute to his use of artificial intelligence ("AI"). Dkt. No. 55 ("Forrest Defs. Repl.") at 1–2; Dkt. No. 58 ("Shook Defs. Repl.") at 1. The Shook Defendants urge the Court to sanction Plaintiff, including by striking his opposition and treating the motions as unopposed. Shook Defs. Reply at 1–2. The Forrest Defendants do not seek sanctions pursuant to Rule 11 given that Plaintiff is *pro se*, but express frustration at the unnecessary resources they spent verifying his inaccurate citations. Forrest Defs. Repl. at 2.

Whether this Court has adopted an individual rule regarding the use of AI or not, Rule 11 requires parties to certify that their legal contentions "are warranted by existing law." Fed. R. Civ. P. 11. Even though he is proceeding *pro se*, Plaintiff "is required to comply with the Local Rules

and Federal Rules of Civil Procedure." *McClellon v. Rickard*, 2026 WL 686499, at *9 (S.D.N.Y. Mar. 11, 2026). Accordingly, whether the deficiencies in Plaintiff's filings stem from his use of AI or some other source, the Court cautions him that future submissions to any court must contain only accurate citations and representations. If they do not—because of AI hallucinating case citations or otherwise—he may be sanctioned, *id.*, although the Court declines to do so now.

**CONCLUSION**

For the reasons set forth above, the Court grants Defendants' motion to compel arbitration and stays all claims pending the outcome of arbitration. Defendants shall file a status report concerning the progress of arbitration ninety (90) days from the issuance of this order, and every ninety (90) days thereafter. The parties shall promptly and jointly file a notice on the docket when arbitration is completed and state their positions as to whether the case can now be dismissed or additional motion practice is necessary. The Clerk of Court is hereby respectfully directed to terminate the motions pending at Dkt. Nos. 37 and 41.

SO ORDERED.

Dated: July 31, 2026
New York, New York

Ronnie Abrams
United States District Judge